PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY SMITH, JR. | ) | CASE NO. 1:07 CV 2863 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
| | ) | |
| JULIUS WILSON, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. <u>Introduction</u>

Before the Magistrate Judge is Henry Smith, Jr.'s petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  Smith is incarcerated at the Richland Correctional Institution serving an 11-year sentence imposed for convictions consisting of five counts of drug trafficking, three counts of possession of drugs, two counts of permitting drug abuse, two counts of possession of criminal tools, one count of engaging in corrupt acts, and one count of possessing a weapon under disability.  *See* http://www.drc.ohio.gov/ (website of the Ohio Department of Rehabilitation and Correction for current status of and basis for Smith's incarceration).

Smith raises only one claim for relief in his petition – he contends that he is entitled to the writ because he was denied effective assistance of counsel at trial due to his attorney laboring

under an actual conflict of interest that adversely affected his counsel's performance.  ECF No. 1 at 5.  Respondent acknowledges having custody of Smith as a result of his convictions but asserts that Smith's Petition should be dismissed as time-barred, "or otherwise denied."  ECF No. 6 at 1. In his response, Smith maintains that his petition is timely but encourages the Court to apply equitable tolling to absolve any perceived tardiness prohibiting the Court from addressing the merits of his claim.  ECF No. 7 at 2-8.

Having reviewed the record and applicable law, the Court recommends dismissing Smith's habeas corpus petition as time-barred and finding that no facts have been presented warranting equitable tolling.

## II.  Factual and Procedural History

### A.  Underlying Offenses, Plea, and Sentencing

The Ohio appellate court that reviewed Smith's case on appeal of his motion to withdraw his guilty plea determined the facts to be as follows:[1]

> Appellant, Henry Smith, Jr., appeals from an order of the Lorain County Court of Common Pleas denying his motion to withdraw a guilty plea. We affirm.
> I.
> Appellant was indicted by the Lorain County Grand Jury on July 30, 2002, on two counts of trafficking in drugs, in violation of R.C. 2925.03, felonies of the first degree, with major drug offender specifications; two counts of preparation of drugs for sale, in violation of R.C. 2925.03, felonies of the first degree, with major drug offender specifications; two counts of possession of cocaine, in violation of R.C. 2925.11, felonies of the first degree, with major drug offender specifications; two counts of permitting drug abuse, in violation of R.C. 2925.13, felonies of the fifth degree; two counts of possession of criminal tools, in violation of R.C. 2923.24, felonies of the fifth degree; and one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32, a felony of the first degree.

---

[1]  Facts found by the state appeals court on its review of the trial record are presumed correct by a federal habeas court.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

Appellant initially pled not guilty on all counts and retained Attorney Michael
Peterson to represent him. On October 14, 2003, Appellant entered a plea of guilty
to all counts, pursuant to a plea agreement. He was sentenced to 11 years in prison,
according to a journal entry dated February 6, 2004.

ECF No. 6, Ex. 1 at 2-3.

### B. <u>Motion to Withdraw Guilty Plea</u>

On March 13, 2006, Smith filed a *pro se* motion to withdraw his guilty plea, pursuant to

Ohio R. Crim. P. 32.1, asserting his trial counsel labored under an actual conflict of interest.

ECF No. 6, Ex. 11 at 8.  On April 4, 2006, the trial court denied the motion without an

evidentiary hearing or stating a reason for the denial.  ECF No. 6, Ex. 12.

Smith, *pro se*, filed a timely notice of appeal on May 2, 2006, in the Lorain County Court

of Appeals.  ECF No. 6, Ex. 13.  In his appeal, Smith asserted two issues: 1) He was denied

effective assistance of counsel because trial counsel labored under an actual conflict of interest;

2) The trial court erred in overruling his motion to withdraw his guilty plea without holding an

evidentiary hearing.  ECF No. 6, Ex. 14 at ii.  On October 23, 2006, the Ohio Ninth District

Court of Appeals affirmed the trial courts denial of Smith's motion to withdraw his guilty plea.

ECF No. 6, Ex. 16.  Because Smith failed to file a transcript pursuant to App.R. 9(B), the state

court of appeals presumed the regularity of the proceedings and found that Smith could not

demonstrate — without a transcript — ineffective assistance of counsel or an abuse of discretion

by the trial court.  ECF No. 6, Ex. 16 at 5-6.

On December 6, 2006, Smith, again acting *pro se*, filed a timely notice of appeal from the

state appellate court judgment affirming the denial of his motion to withdraw his guilty plea.

ECF No. 6, Ex. 20.  Smith asserted the same two assignments of error as he did in his appeal to

-3-

the Ohio Ninth District Court of Appeals (ineffective assistance of counsel and trial court erred in overruling his motion). ECF No. 6, Ex. 21 at ii.  On February 28, 2007, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[2] ECF No. 6, Ex. 23.  Smith did not appeal this decision to the United States Supreme Court.

### C.  Application to Reopen Appeal

On October 31, 2006 and prior to the denial of his appeal by the Ohio Supreme Court, Smith, acting *pro se*, filed an application to reinstate his appeal pursuant to Ohio Appellate Rule 9(E) to correct the omission of the transcript.  ECF No. 6, Ex. 17.  Smith placed the blame for the omission of the transcript squarely on the shoulders of the county clerk of court.  ECF No. 6, Ex. 17 at 2.  The court of appeals treated the motion as a motion for reconsideration pursuant to App.R. 26(A) because Smith did not have appellate counsel and App. R. 26(B) does not allow a case to be reopened without an ineffective assistance of appellate counsel claim.  ECF No. 6, Ex. 17 at 1.  On November 15, 2006, the court of appeals denied the motion to correct the omissions and the motion for reconsideration "[b]ecause the Appellant must bear the consequences of his own procedural mistake."  ECF No. 6, Ex. 17 at 3.  Smith did not further appeal this decision.

### D.  Post-conviction Petition

On December 5, 2006, Smith, acting *pro se*, filed in the Lorain County Court of Common Pleas a motion to vacate his sentence and conduct a new sentencing hearing in light of *State v.*

---

[2]  The Court observes that Respondent errantly stated the Ohio Supreme Court dismissal date as February 28, 2006, not 2007.  ECF No. 6 at 7,17.  Additionally, Petitioner erroneously claimed the Ohio Supreme Court dismissed his appeal on June 20, 2007.  ECF No. 7 at 6.  The Court cannot find any document or journal entry that corresponds to June 20, 2007.

*Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio 2006) as his only assertion.[3]  ECF No. 6, Ex. 25.

The trial court, on December 11, 2006, denied the motion without opinion.  ECF No. 6, Ex. 26.

Smith, on January 8, 2007, filed a timely notice of appeal and later asserted in his Appellant's

Brief his one assignment of error:

> The trial court erred when it failed to vacate the defendant's void sentence where the imposed sentence is under portions of the Ohio sentencing statute R.C. § 2925.03(C)(4)(G) and § 2929.14(D)(3)(B), which are unconstitutional, and contrary to law, in clear violation of defendant's constitutional rights.

ECF No. 6, Exs. 27 & 28 at 1.  The state court of appeals affirmed the trial court on June 29,

2007, finding that *Foster* did not apply retroactively; thus, his post-conviction petition was

"clearly untimely."  ECF No. 6, Ex. 30 at 3-4; (*State v. Smith*, Slip Copy, 2007 WL 1874239

(Ohio App. 9th Dist. June 29, 2007).

Smith, acting *pro se*, filed a timely notice of appeal on August 8, 2007 from the appellate

court's decision.  ECF No. 6, Ex. 31.  Smith asserted the same sole assignment of error as set

forth in his appeal.  ECF No. 6, Ex. 32 at ii.  On November 21, 2007, the Ohio Supreme Court

dismissed the appeal as not involving any substantial constitutional question.  ECF No. 6, Ex. 34.

Smith did not further appeal this decision.

### E.   Federal Habeas Petition

Again acting *pro se*, Smith filed the present petition for federal habeas relief on

September 20, 2007, asserting one ground for relief:

> 1.  Coerced guilty plea was the result of a denial of effective assistance of counsel where counsel labored under an actual conflict.

---

[3]  The Court notes that Respondent incorrectly stated the filing date of Smith's motion to vacate his sentence as December 6, 2006.  ECF No. 6 at 7.  The correct date is December 5, 2006.  *See* ECF No. 6, Exs. 10 at 7 & 25 at 1.

-5-

ECF No. 1 at 5.  The State has responded by contending that the petition is time-barred or

otherwise infirm and should be dismissed.  ECF No. 6.  Smith filed a traverse wherein he

contends first that the petition is not statutorily time-barred.  ECF No. 7 at 8.  Second, Smith

argues that equitable tolling should permit the Court to reach the merits of his habeas claims

because rare and extraordinary circumstances existed that were beyond his control and that

prevented him from filing a timely habeas petition.  ECF No. 7 at 9-11.  Third, that the Court

should grant his petition based on the merits of his claim.  ECF No. 7 at 28-29.  Finally, Smith

requests that this Court appoint counsel to assist him and set an evidentiary hearing.  ECF No. 7

at 29.

### III.  Procedural Gateways to Review

To permit federal judicial resources to focus on only the most compelling cases, a

petitioner must successfully pass through several procedural gateways to qualify for federal

review.  Those gateways and their application to the instant petition are provided below.

### A.  Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody
> under the judgment and sentence of a State court of a State which contains two or
> more Federal judicial districts, the application may be filed in the district court for
> the district within which the State court was held which convicted and sentenced him
> and each of such district courts shall have concurrent jurisdiction to entertain the
> application.

28 U.S.C. § 2241(a) and (d).

Smith was convicted in the Court of Common Pleas in Lorain County, Ohio which is

within the Northern District of Ohio.  This Court, therefore, has jurisdiction over Smith's Petition.

### B.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations period for federal habeas petitions filed by prisoners challenging state-court convictions after its April 24, 1996 effective date.  28 U.S.C. § 2244(d); *McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir.2007).  The one-year period begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1); *Jimenez v. Quarterman*, 129 S.Ct. 681, 685-86 (2009).  As this one-year period is not a jurisdictional bar, a petitioner may have an untimely petition reviewed if the petitioner establishes that the doctrine of equitable tolling applies. *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001).

According to the analysis below, the Court finds that Smith's Petition is time-barred and equitable tolling does not apply.

### C.  Evidentiary Hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  Smith's claim involves legal issues which can be resolved without additional factual inquiry.

### D.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all available state remedies or have no remaining state remedies available before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004);

*Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, then the petitioner has not exhausted all of his state remedies. *Rust v. Zent*, 17 F3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Smith has no remaining state remedies for his claim, therefore, his claim has been exhausted.

### E.  Non-cognizability

State prisoners are entitled to federal habeas corpus relief only when they are in custody due to violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). As such, claims for relief based on violations of state law are non-cognizable in a federal habeas proceeding, *i.e.*, a federal court cannot review claims of state law violations presented in a petition for habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Rulings by the state's highest court on matters of state law are binding on federal courts. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Further, a federal court may not second-guess a state court's interpretation of its own procedural rules. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). Thus, even if a state court errs in applying its own procedural default statute, the error is not cognizable in federal habeas review. *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).

Smith's sole ground for relief asserts a violation of the United States Constitution and is thus cognizable in this federal habeas proceeding.

**F.  Procedural Default**

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context.  *Anderson*, 459 U.S. 4 (1982); *Picard*, 404 U.S. 270 (1971).  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner:

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v Thompson*, 501 U.S. 722, 750 (1991).

Smith's sole ground for relief is not procedurally defaulted because he appealed the matter presented in his petition to the Ohio Supreme Court.

## IV.  Standard of Review

AEDPA governs the Court's review of a habeas corpus petition that has successfully passed through the quagmire of procedural gateways.  The AEDPA altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis original). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be

-10-

correct." 28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.*

## V.  **Analysis**

### A.  **Smith's Petition is Time-barred**

#### 1.  *Statutory Tolling*

28 U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of-

> (A)  the date on which the judgment became final by conclusion of direct review or the expiration of time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by state action;

> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, Respondent relies on § 2244(d)(1)(A) to render Smith's habeas petition time-barred.  ECF No. 6 at 14.  Respondent calculates that the one-year limitations period began to run the day after the 30-day time period expired for filing a timely direct appeal, March 8, 2004.  ECF No. 6 at 14.  Thus, absent any additional tolling, Smith would have been required to file his habeas petition by March 8, 2005 because he did not file a timely direct

-11-

appeal.  ECF No. 6 at 14.  Additionally, Respondent argues that Smith should not benefit from

some later start date pursuant to 28 U.S.C. § 2244(d)(1)(D).  ECF No. 6 at 14.  Section

2244(d)(1)(D) provides a habeas petitioner a later start date for the limitations period if the

petitioner was unable, through the exercise of due diligence, to discover the factual predicate of

his claim.  Respondent argues, without citing authority, that because Smith's claim lacks merit,

he is not entitled to the benefit of § 2244(d)(1)(D).  ECF No. 6 at 14-15.  Neither the plain

language nor the Court's interpretation of § 2244(d)(1)(D) require that a claim be meritorious in

order to delay the start of the one-year limitations period.  *See McSwain v. Davis*, Slip Copy,

2008 WL 2744640 at *2 (6th Cir. 2008) ("The statute clearly provides that the one-year period

shall be measured from the time the new evidence 'could have been discovered through the

exercise of reasonable diligence.'") (*citing* 28 U.S.C. § 2244(d)(1)(D)).  Respondent's

interpretation would impose a barrier not supported by law and require a court to analyze the

merits of the claim *prior to* determining whether the claim is time-barred according to

§2244(d)(1)(D).  Such a reading of the statute would be impractical and encourage inefficiency.

Nevertheless, albeit for different reasons, the Court agrees that 28 U.S.C. § 2244(d)(1)(D) does

not delay the start of Smith's limitations period.  *See Dicenzi v. Rose*, 419 F.3d 493, 497-500 (6th

Cir. 2005).

Smith claims not to have known that he and his mother, Myrna, were concurrently

represented by the same attorney – Michael Peterson – during their separate criminal

proceedings.  This concurrent representation is the factual predicate for Smith's claim of

ineffective assistance of counsel.  Smith also claims that he did not discover this factual predicate

until mid-September 2005.  ECF No. 6, Ex. 11 at 27.  He maintains that he could not have

-12-

discovered the facts surrounding his claim of ineffective assistance of counsel because his attorney allegedly lied and withheld information regarding the alleged concurrent adverse representation of himself and his mother.  In three different documents – his verified petition, brief appealing the denial of his motion to withdraw his guilty plea and an attached affidavit – Smith recounts events that convince the Court that Smith knew *or* should have known of his mother's criminal charges and the identity of the attorney representing her.[4]  *See* ECF No. 6, Ex. 14 at 10.  Specifically, in describing a conversation that occurred in "early September 2003," Smith stated that "Attorney Peterson stressed to [Smith] that he and Attorney Burge could get him a good plea deal of about eleven years[5] *and* get his mother's charges dropped in exchange for his pleading guilty to the indictment." ECF No. 6, Ex. 14 at 9-10  (emphasis added).  Based upon Smith's own words, he knew or could have realized through reasonable diligence[6] that his attorneys were also handling Myrna's case because of the attorney's assertion that *he* (one of Smith's attorneys) could "get his mother's charges dropped in exchange for [Smith] pleading guilty to the indictment."  This statement also casts serious doubt on Smith's claim that if he had known his attorney was laboring under an actual conflict he would have insisted on new counsel and a trial during which he would have claimed the drugs were not his. ECF No. 7 at 19, 23.

Moreover, Smith's arraignment took place on August 7, 2002.  Attorney Peterson

---

[4] Given that Smith has proceeded *pro se* post-sentencing, the Court credits the words in these documents directly to Smith and assumes that he intended what he wrote.

[5] The Court notes that the trial court sentenced Smith to the statutory minimum eleven years – the term his attorney allegedly stated he could bargain for – as opposed to the maximum 141 years Smith was eligible to receive.

[6] Smith simply could have asked his attorney, "How can you get her charges dropped? Are you her attorney?"or "Who is her attorney?"

-13-

appeared with him.  His mother's arraignment took place on August 28, 2002.  Jonathan Bartell appeared on behalf of Smith's mother.[7]  Smith claims to have ceased all communication with his mother after the "early September 2003" conversation described above, leaving an entire year before the cessation during which he and his mother could have communicated with each other.[8]  According to Smith, both were represented by Peterson during that year, *i.e.*, from August 2002 until September 2003.  Smith withdrew his pleas of not guilty and pled guilty in October 2003.  Peterson signed both Smith's and Myrna's guilty plea entries that same month.  ECF No. 6 at 4 n.2.  Smith was not sentenced until nearly four months later, February 6, 2004.

The Court finds it difficult to fathom that neither Smith nor his mother ever mentioned the name of the attorney representing them during the nearly year long period leading up to their guilty pleas or at some time after, before the habeas limitations period expired in March 2005.  Additionally, Smith's brother, James Smith, attended Smith's guilty plea hearing.  James' attendance is remarkable because the presiding judge charged James a $100 fine because his cell phone rang during the proceedings.  Smith's attorneys – Peterson and Burge – were present.  The Court finds it incredible that neither Myrna nor James ever mentioned to Smith that he and his mother had the same attorney, Michael Peterson.

Accordingly, this Court finds that Smith should have, if he had not already, timely discovered through the exercise of *reasonable diligence* that Attorney Peterson concurrently

---

[7]  Attorney Bartell was retained by Myrna and had offices in the same Cleveland, Ohio office building as Peterson, although in a different suite.  ECF No. 6, note 2.

[8]  Because Smith claims to have "ceased communications" with his mother in mid-September, the Court infers that Smith had communicated with his mother prior to mid-September 2003.

-14-

represented both him and his mother thereby disqualifying Smith from the benefit of a later start date in accorandance with § 2244(d)(1)(D).

Without a later start date, Smith's one-year limitations period ended on March 8, 2005. Smith did not file his federal habeas petition until September 20, 2007 – over two and one-half (2 ½) years late.  None of Smith's state court filings tolled the statute of limitations because all filings were made after the statute had run on March 8, 2005.  Once the limitations period has expired, state collateral review proceedings can no longer serve to toll the statute of limitations bar.  *See* *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").  Even the filing of a motion for delayed appeal does not cause the AEDPA's statute of limitations to begin to run anew; it only tolls the statute for the time the motion is pending.  *See* *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006); *Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir.2004) (holding that a state petition for post-conviction review claiming ineffective assistance of appellate counsel tolls, but does not restart, AEDPA's one-year statute of limitations, and rejecting the argument that the state petition restarted the clock because it was part of the direct review process); *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir.2001) ("[A]lthough the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion.").  Based upon the above analysis, the Court finds Smith's Petition is statutorily time-barred.

## 2. *Equitable Tolling*

Smith urges the Court employ the doctrine of equitable tolling, which preserves a

-15-

plaintiff's claims when strict application of the statute of limitations would be inequitable. Respondent contends that Smith has not established any bases required for equitable tolling. The Court agrees.

"[T]he doctrine of equitable tolling allows federal courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (*quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F3d. 552, 560-61 (6th Cir. 2000)). The petitioner who raises the argument that he is entitled to equitable tolling bears the burden of establishing entitlement. *See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002); *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003); *Keenan*, 400 F.3d at 420. The Supreme Court has stated that a petitioner "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). With respect to the first element, it does not appear that Smith diligently pursued his rights. As stated above, the Court does not accept Smith's argument of not discovering the factual predicate to his claim until September 2005. Thus, Smith has failed to established the first element set forth in *Pace*.

Also, Smith has not established the second element – that "extraordinary circumstances" stood in the way of him timely filing his habeas petition *after* he allegedly discovered the factual predicate to his claim in September 2005. To this end, in his traverse, Smith asserts that as "[a]n incarcerated pro se petitioner, [his] circumstance [was] certainly rare." ECF No. 7 at 10. He is incorrect. Smith's incarceration does not distinguish his circumstances nor elevate them to

-16-

extraordinary.  Smith's petition and traverse are completely void of extraordinary circumstances

justifying his tardy filing.  Therefore, the Court finds that Smith has not established the second

element set forth in *Pace.*

In addition to the elements established in *Pace*, the Sixth Circuit in *Dunlap v. U.S.*, 250

F.3d 1001 (6th Cir. 2001), set forth the following factors to consider and balance in determining

if equitable tolling is appropriate: (1) "the petitioner's lack of notice of the filing requirement;"

(2) "the petitioner's lack of constructive knowledge of the filing requirement;" (3) "diligence in

pursuing one's rights;" (4) "absence of prejudice to the respondent;" and (5) "the petitioner's

reasonableness in remaining ignorant of the legal requirement for filing his claim."  *Id.* at 1008-

09.  Here, Smith has not shown that he lacked notice of the one-year limitation period to file his

habeas petition; was unaware of the § 2244(d) limitation period; that he was diligent in pursuing

his rights; or that any ignorance of the legal requirement to timely file his claim was reasonable.

*See Dixon v. Ohio*, 81 Fed. Appx. 851, 853 (6th Cir. 2003) (petitioner's lack of counsel and one

month placement in solitary confinement did not excuse lack of diligence in pursuing his claims);

*Cobas v. Burgess*, 306 F.3d. 441, 444 (6th Cir. 2002) (inmate's lack of legal training, poor

education and even illiteracy does not provide reason to toll the statute of limitations).

Accordingly, Smith's *pro se* status, incarceration, nor his alleged lack of timely knowledge of

the factual predicate for his claim excuse his tardy Petition.

However, a credible claim of actual innocence may equitably toll the § 2244(d) limitation

period.  *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005).  Smith's sole ground for relief does not

assert actual innocence.  "[A]ctual innocence means factual innocence, not mere legal

insufficiency."  *Bousley v. U.S.*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim

-17-

requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Smith does not present new reliable evidence of innocence. Rather, he unconvincingly asserts that he was unaware that an actual conflict of interest existed regarding his legal representation. But for this "conflict," Smith argues that he would not have pleaded guilty; he would have gone to trial and claimed the drugs were not his. This bald twelfth-hour assertion does not nullify the facts that supported his guilty plea and conviction. Thus, none of Smith's arguments have met the standard set forth in *Souter/Schlup* to prove actual innocence.

Having given Smith the benefit of the analyses urged by *Pace*, *Dunlap* and *Souter*, the Court finds that Smith is not entitled to equitable tolling.

### B.  Smith's Ineffective Assistance of Counsel Claim Lacks Merit

The AEDPA requires a certain deference be paid to "any claim that was adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). The statute does not demand the same deference for state court procedural rulings. Here, the state appellate court that reviewed the trial court's denial of Smith's motion to withdraw his guilty plea reviewed the merits, *i.e.*, the same facts that underpin the error alleged in Smith's habeas petition. Although it finds Smith's Petition to be time-barred, this Court  will address the merits of Smith's claim for habeas relief. Above all else, the Court hopes that this practice shows a petitioner who is not represented by counsel that it was not merely a procedural technicality that precluded him from obtaining the relief sought.

In undertaking a merits review in a habeas petition, the federal court is constrained by the

language of 28 U.S.C. § 2254(d) which, again, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the United States Supreme Court clearly established law governing conflicts of interest arising from multiple concurrent representation of persons with potentially adverse interests.[9]   The *Sullivan* Court found the trial court had no duty to initiate inquiry into the propriety of concurrent multiple representation. *Id. at 348*; *see also United States v. Steele*, 576 F.2d 111 (6th Cir. 1978) (per curiam) (finding the Sixth Amendment does not require inquiry into the possibility of conflicts). Rather, "a defendant who raised no objection [regarding his representation], must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. Recognizing that "the possibility of a conflict is insufficient to impugn a criminal conviction," the Court held that "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id. at 349-50* (*citing*

---

[9]  In habeas cases brought under 28 U.S.C. 2254, *Sullivan* (rather than *Strickland*) applies in cases involving multiple representation. *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006).

*Holloway v. Arkansas*, 435 U.S 475, 487-491 (1980)).

Smith fails to meet the *Sullivan* standard for relief.  First, he has not shown an actual conflict of interest exists.  Therefore, assuming for the sake of argument that an actual conflict existed, Smith fails to show that the conflict adversely affected his lawyer's performance.

### 1.  **The Alleged Actual Conflict**

Smith claims that his trial counsel, Michael Peterson, concurrently represented Smith and Smith's mother, Myrna.  This concurrent representation of Smith and Myrna created an alleged actual conflict of interest that adversely affected Peterson's performance, *i.e.*, his representation of Smith.  The concurrent representation occurred without Smith's knowledge or waiver while he and his mother were "co-defendants."   Smith did not object to the concurrent representation because he claims not to have known until years later.  ECF No. 1, Ex. 1 at 18, 24 (Verified Petition).  Had this conflict of interest not existed, Smith claims he would have gone to trial rather than enter a plea of guilty.  That course of action, he claims would have been "an absolute certainty."  ECF No. 7 at 27.

### 2.  **Affect of Alleged Actual Conflict**

Smith was charged with fourteen counts of felony drug related law violations.  He pled guilty to all of them and was sentenced to eleven years incarceration.  Myrna was charged with knowingly permitting drug abuse, a fifth degree felony.  ECF No. 6, Ex. 38.  She, however, pled guilty to a misdemeanor and was sentenced to a 30-day suspended sentence.  ECF No. 6, Ex. 40.

In a sworn affidavit, Smith detailed events leading up to his guilty pleas.  He stated that, in September 2003, one month before he pled guilty Attorney Peterson made his "third visit" and told him that (presumably at Smith's trial) Myrna would testify that she knew Smith was dealing

-20-

drugs from her home.  ECF No. 6, Ex. 11 at ¶ 7 (Smith's Affidavit); ECF No. 1, Ex. 1 at 10 (Verified Petition).  "Attorney Peterson stressed to [him] that he and attorney Burge could get me a good plea deal of about eleven years and get my mother's charges dropped in exchange for my pleading guilty to the indictment.  Attorney Peterson explained that a plea deal was the best way to go because with my mother on the stand the jury would convict me in a "New York" minute." ECF No. 6, Ex. 11 at ¶ 9 (Smith's Affidavit); ECF No. 1, Ex. 1 at 11 (Verified Petition).  With this knowledge, Smith withdrew his pleas of not guilty and entered pleas of guilty to all charges. ECF No. 6, Ex. 11 at ¶ 10 (Smith's Affidavit); ECF No. 1, Ex. 1 at 11 (Verified Petition).  Smith remained silent when he was sentenced four months later.

Despite Smith's contention, he and Myrna were not co-defendants.  The Ohio Supreme Court has defined "'co-defendant' as . . . 'more than one person charged in the same complaint or indictment with the same crime.'"  State v. Stojetz, 84 Ohio St.3d 452, 459, 705 N.E.2d 329, 338 (Ohio 1999) (citing State v. Wickline, 50 Ohio St. 3d. 114, 118, 552 N.E.2d 913, 918 (Ohio 1990)); See e.g., U.S. v. Carlin, 573 F.Supp. 44, 47 n.3 (N.D. Ga. 1983) (noting the strict definition of co-defendants, but finding individuals to be "constructive" co-defendants based upon nearly identical charges and non-severable participation in the same course of events).

 Smith and Myrna were charged in an overlapping time frame in separate indictments.[10] Neither was a named defendant in the other's indictment.  Myrna was also not named in Smith's indictment as a known member of his criminal enterprise.  See ECF No. 6, Exs. 2, 38.  They are not "co-defendants" simply because  Myrna's crime arose from permitting her son to deal drugs

_____

   [10]  Smith was initially indicted on July 20, 2002.  His indictment was later amended on August 21, 2002, the same day his mother was indicted.

-21-

from her home. ECF No. 6, Ex. 11 at ¶ 7 (Smith's Affidavit). This distinction, however, is not outcome determinative.[11]

"A possible conflict inheres in almost every instance of multiple representation." *Sullivan*, 446 U.S. 335, 348. The theoretical conflict must ripen into an actual conflict that adversely affected Attorney Peterson's performance to have impinged upon Smith's Sixth Amendment rights. That did not occur in this case. Even if Smith and Myrna had been co-defendants, Smith's claim of ineffective assistance of counsel still fails because he has not shown that an actual conflict of interest existed, the constitutional predicate for his claim of ineffective assistance of counsel. *Sullivan*, 446 U.S. at 349-50. Nor has he shown that the alleged conflict adversely affected his lawyer's performance. As the *Sullivan* Court held, the mere possibility of a conflict is not sufficient to impugn a criminal conviction.

Smith received the full benefit of his plea bargain. The state court imposed an eleven year sentence, a marked departure from the maximum term of 141 years he originally faced. His mother's felony criminal charge was reduced to a misdemeanor and even her 30-day jail time was suspended. To the extent any conflict existed, Smith waived it by failing to timely object and pleading guilty in exchange for an eleven-year sentence with full knowledge that his mother's sentence would also be reduced.

The Supreme Court adjudicated a similar matter in *Dukes v. Warden*, 406 U.S. 250 (1972). Defendant Dukes pled guilty on the advice of two lawyers, one of whom also represented Dukes' co-defendants on an unrelated charge. Later, Dukes learned that this lawyer

---

[11] Smith claims that being co-defendants creates an actual conflict. Respondent argues that the lack of co-defendant status nullifies any potential conflict. Both are incorrect.

-22-

sought leniency for the co-defendants by arguing that their cooperation with the police induced Dukes to plead guilty. Appealing the denial of his writ for habeas corpus, Dukes argued that his lawyer's conflict of interest had infected his plea. The Supreme Court affirmed the denial of the habeas petition because it found "nothing in the record . . . which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the plea in question involuntary and unintelligent. Since Duke did not identify an actual lapse in representation, we affirmed the denial of the habeas corpus relief. " *Sullivan*, 446 U.S. at 349 (*quoting Dukes*, 406 U.S. at 256) (citations omitted). Like Dukes, Smith has failed to identify either an actual conflict or lapse in representation. Furthermore, Smith has not shown that his pleas of guilty were involuntarily and unknowingly made.

A thorough review of the record before the Court and the applicable law yields no evidence of an actual conflict or an adverse effect on Peterson's performance resulting therefrom, in violation of Smith's Sixth Amendment rights. Accordingly, the state court's ruling on Smith's ineffective assistance claim is neither contrary to nor an unreasonable application of federal law.

## VI. Conclusion

Based upon the foregoing, the Magistrate Judge finds that Smith's Petition is statutorily time-barred and that equitable tolling does not apply. Alternatively, Smith's sole ground for relief lacks merit.

Consequently, the Court recommends that the petition of Henry Smith, Jr. for a writ of

habeas corpus be dismissed with prejudice as statutorily time-barred, pursuant to 28 U.S. C. § 2244(d), and that Smith's requests for the appointment of counsel and an evidentiary hearing be denied.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Benita Y. Pearson*　　　　　　　　
Dated: February 23, 2009　　　　　　　　United States Magistrate Judge

## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).